**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| STEVEN BLUM, SOFIA MALACHOWSKY, DALE PEARMAN, and COLLEEN MURPHY, | Case No. _____ |
| | **DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| v. | |
| ALTERRA MOUNTAIN COMPANY and IKON PASS, INC., | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

1.      Alterra sells ski passes that allow purchasers access to various resorts, including passes that grant access all season long. The passes, once purchased, give skiers the right to access the resorts and ski on the day(s) of their choosing. In exchange, Alterra received substantial up-front revenue from skiers.

2.      Alterra sold these passes for the 2019-2020 winter ski season. While the passes were generally used as expected until March, Alterra closed its ski resorts in mid-March in connection with the COVID-19 pandemic. The resorts have stayed closed ever since, effectively ending the ski season months earlier than expected and eliminating the utility of the passes from the day of the closure onward.

3.      Although Alterra charged skiers for the ski passes, which entailed future access to various ski resorts, it issued no refunds upon the closure of the resorts. Instead, even though skiers could no longer use the passes, Alterra has chosen to keep

1

the money. Plaintiffs are purchasers of the passes at issue and, on behalf of themselves and others like them, seek to compel Alterra to provide appropriate remuneration.

## THE PARTIES

4.      Plaintiff Steven Blum is a citizen and resident of Manhattan Beach, California. Mr. Blum paid more than $600 for an IKON Base Pass for the 2019-2020 ski season, and has been precluded from using the pass since mid-March 2020. Mr. Blum has received no refund for his purchase of the pass.

5.      Plaintiff Sofia Malachowsky is a citizen and resident of Incline Village, Nevada. Ms. Malachowsky spent over $600 on an IKON Base Pass for the 2019-2020 ski season, and has been precluded from using the pass since mid-March 2020. Ms. Malachowsky has received no refund for her purchase of the pass.

6.      Plaintiff Dale Pearman is a citizen and resident of Hermosa Beach, California. Mr. Pearman paid more than $1500 for IKON Passes for the 2019-2020 ski season, and has been precluded from using the passes since mid-March 2020. Mr. Pearman has received no refund for his purchase of the passes.

7.      Plaintiff Colleen Murphy is a citizen and resident of San Francisco, California. Ms. Murphy paid more than $600 for an IKON Base Pass for the 2019-2020 ski season, and has been precluded from using the pass since mid-March 2020. Ms. Murphy has received no refund for her purchase of the pass.

8.      Defendant Alterra Mountain Company is a Delaware corporation and has its principal place of business in Denver, Colorado.

9.      Defendant IKON Pass, Inc. is a Delaware corporation, with its principal place of business in Denver, Colorado, and is a wholly owned subsidiary of Alterra Mountain Company. Throughout this complaint, Alterra Mountain Company and IKON Pass, Inc. are referred to collectively as the Alterra Defendants or Alterra.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which Defendants and more than two-thirds of the proposed plaintiff class are citizens of different states.

11.     This Court may exercise jurisdiction over Defendants because they maintain their headquarters in Colorado; they are registered to conduct business in Colorado; they have sufficient minimum contacts in Colorado; and they intentionally avail themselves of the markets within Colorado through the promotion, sale, and marketing of the ski passes at issue in this case, thus rendering the exercise of jurisdiction by this Court proper and necessary.

12.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants are headquartered in this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### Ikon Ski Passes

13.     Alterra operates 15 ski resorts, including 13 in the United States. These include resorts in California, Utah, and Colorado, such as Big Bear Mountain Resort, Deer Valley Resort, Steamboat Resort, Winter Park/Mary Jane, Mammoth Mountain, and Squaw Valley.

14.     Alterra sells a variety of ski passes for its resorts. Along with traditional single-day tickets at individual Alterra resorts, Alterra offers multi-resort season-long passes (which can allow purchasers to access a variety of resorts at locations and on days of their choosing throughout the ski season).

15.     In the past, skiers often bought lift tickets for one day (or a few days) at a time, for a single location. In recent years, there has been a shift toward ski passes offering access to multiple resorts over an entire ski season.  Generally, ski pass buyers visit the slopes more frequently, which results in increased food, retail, and rental revenues for resorts. In exchange, customers receive larger scale access (throughout the ski season and at multiple resorts) to ski when and where they choose.

16.     Alterra markets its ski passes under the "Ikon Pass" brand name.

17.     Ikon ski passes come in product tiers and frequently come with incentives for purchasing the passes early in the year and committing to renew the pass for subsequent ski seasons. For example, Alterra offered a discount of $150 on all tiers of the Ikon Pass if purchased before April 24, 2019, and of $50 if purchased before October 17, 2019. And the automatic renewal option also came with offers of discounted prices.

18.     The highest-priced pass for the 2019-2020 season, simply called the Ikon Pass, was priced for adults (without discounts) at $1,099.

19.     The Ikon Pass offered "unlimited" access to 14 Alterra resorts, including Steamboat, Winter Park/Mary Jane, Squaw Valley, Mammoth, and Big Bear. It also offered access to partner resorts, including seven days each at resorts including Jackson Hole and Taos, and seven days combined at a set of resorts including Aspen Snowmass, Alta, Snowbird, and Killington.

20.     The Alterra ski pass that is one step less expensive than those discussed above is known as the Ikon Base Pass.

21.     For the 2019-2020 ski season, the Ikon Base Pass was $799 (without discounts). The Ikon Base Pass provides "unlimited" access to 8 Alterra resorts, including Big Bear; adds holiday restrictions to 4 other Alterra resorts, including Squaw Valley and Mammoth; caps access at 5 days each to the remaining 2 Alterra resorts

(including Steamboat) plus some partner resorts including Jackson Hole and Taos; and caps access at 5 days combined for a set of partner resorts including Aspen Snowmass, Alta, Snowbird, and Killington.

22.     Ikon branded ski passes could be purchased in a number of locations, including online on websites controlled by Defendants. For example, Ikon passes could be purchased on www.ikonpass.com and various Alterra resort websites, like www.mammothmountain.com.

23.     Alterra's websites promise "flexibility" in connection with these ski passes and tell customers they will generally be able to access various ski resorts throughout the ski season. Alterra markets its ski passes as offering "flexibility to ride in 20/21," saying customers can "choose when and where [they] ride" at multiple destinations, save for a handful of specified blackout dates.

**The Resort Closures**

24.     The COVID-19 pandemic reached the U.S. in early 2020 and many businesses closed as a result.

25.     In March 2020, Jared Polis, Governor of Colorado, issued a series of executive orders. Order D 2020 003 declared COVID-19 a disaster emergency. Subsequent orders (D 2020 004 and D 2020 06) ordered ski resorts to suspend operations.

26.     Alterra announced on March 14, 2020, that it would close its ski resorts on March 15, 2020. Alterra's closure was "until further notice," but Alterra's ski resorts ultimately have not reopened during the 2019-2020 ski season.

27.     The closures fell within the 2019-2020 ski season, which Alterra sold passes for as "19/20" or "2019/20" passes. The ski season in North America begins towards the end of one calendar year and ends during the subsequent calendar year.

The exact timing and duration of the U.S. ski season varies each year, depending on factors such as weather, snowfall, and geographic location. For example, last year Alterra extended the Squaw Valley Alpine Meadows season until early July.  However, the spring months are among the busiest skiing months at many facilities, such that March is the second-highest revenue generating month in the ski season after December.

28.     Spring skiing in March and April is popular for several reasons: many school spring breaks fall in those months, ski resorts have increasingly used artificial snowmaking to augment the ski season, and global weather trends have shifted the U.S. ski season to start later and end later over time.

29.     At the time of Defendants' closure of the ski resorts, many skiers had already purchased the ski passes discussed above, which were to provide continued access to various ski resorts well beyond the mid-March closures. Defendants had accepted payment for those ski passes in exchange for the promise to provide access to the ski resorts through the natural end of the 2019-2020 ski season, which was still many weeks away on the date of the closures.

30.     Alterra has refused to provide refunds to the purchasers of its ski passes. Defendants have withheld those refunds despite being unable to contest the fact that they received payment in exchange for providing additional ski opportunities during the 2019-2020 ski season which they were not providing.

31.     At the time of the ski resort closures, Defendants acknowledged the closures constituted a premature and unnatural end to the 2019-2020 ski season. On March 14, 2020, Alterra stated that skiing would be suspended "until further notice," one day after telling skiers that "our 15 destinations are open for business and we welcome you to the mountains." In April, Alterra acknowledged the "the shortened

19/20 winter season" and in May, Alterra's CEO Rusty Gregory conceded that Ikon pass buyers "didn't get what they paid for."

32.     In recognition that they had accepted payment from their customers in exchange for a promise to provide access to ski resorts for the 2019-2020 ski season but had not in fact provided that benefit, Defendants initially suggested they would be providing refunds of ski-pass purchase funds. Alterra said on March 14, 2020, that "Each [Alterra] resort will work directly with guests in canceling their visit and will provide refunds or credits to those who have hotel and other bookings during this closure period."

33.     Alterra reversed course, however, and ultimately declined to refund the money they had been paid for skiing for the remainder of the 2019-2020 ski season. Instead, well after announcing the ski resorts' closure, Alterra announced that rather than refunding that money, it would merely be offering partial credits toward Ikon ski passes for skiing during the 2020-2021 ski season.

34.     To accept these credits, skiers thus had to provide Defendants still more money for future skiing, while accepting the risk that COVID-related restrictions would continue to impact skiing in the 2020-2021 ski season. As many Alterra customers have stated on its Facebook page, these credits do not provide the refunds owed and offer inadequate compensation for the loss of skiing opportunity during the 2019-2020 ski season:

> I have 8 [2019/2020] passes for my family, for which I pa[id] more than $5000 and did not use a single day of skiing because we are out of state and planned only 1 week vacation. Shame on you....[1]

---

[1] Kate Kate, Comment, Facebook (April 19, 2020, 8:03 AM), https://www.facebook.com/IkonPass/photos/a.1719304274793587/3084308171626517/?type=3&comment_id=3088611227862878.

[I]t was disappointing to find out from Ikon Customer Service that there
would be no refund or partial credit for an in-season Covid/pandemic
extended closure . . . . There seems to be only partial acknowledgement
that some of us were actually buying this pass in part for the spring skiing
which often goes to June or beyond at Squaw and Mammoth.[2]

How do I get a refund for 19/20?  We've not been able to use IKON PASS
at all this season.  Given that the destinations are closed.  I phoned you at
IKON and spoke[ ] to a representative twice now in a month.  They say "A
decision will be made soon . . ."[3]

After many years of being an Epic pass holder I switched to the Ikon Pass.
I had planned to use the pass in latter part of the season, purchased airline
tickets, vehicle rental, and accommodations and had to cancel all off them.
All of them allowed either full refunds or changes without fees. When I
reached out to Ikon I did not receive the same great customer service.
Since I did not use any of the Ikon destinations due to the shutdown of
resorts I expected some sort of credit or deferral of the pass to next season.
Very poor customer service in the face of adversity. Many other
companies have shown much greater class and understand their actions
will translate to loyalty in the future. Ikon has a lot to learn about
customer service.[4]

I only take 1 ski trip per year since I live in Houston, TX. I buy the Ikon
Pass because I ski every day I am at our destination, which was supposed
to be 10 days this past March. We arrived 3/13, I skied 3/14 then the
Mountain closed the next day. Not too thrilled at paying $92 per run the 1
day I did get to ski, and to add insult to injury, is Ikon's response of giving
an additional $100 discount for next year. Ridiculous!! So, basically, you
want me to pay for 2 seasons, only to be able to ski 1......Come up with a

[2] David Schweer, Comment, Facebook (April 17, 2020, 4:27 PM),
https://www.facebook.com/IkonPass/photos/a.1719304274793587/3084308171626517
/?type=3&comment_id=3084397784950889.
[3] Robert Khoi, Comment, Facebook (April 21, 2020, 11:14 AM),
https://www.facebook.com/IkonPass/photos/a.1719304274793587/3084308171626517
/?type=3&comment_id=3093757277348273.
[4] Chris Oriyano, Comment, Facebook (April 18, 2020, 7:04 PM),
https://www.facebook.com/IkonPass/photos/a.1719304274793587/3084308171626517
/?type=3&comment_id=3087247414665926.

better way Ikon, this is NOT customer service, you need to do the right
thing and be fair![5]

35.     Alterra customers have posted similar comments on other websites, such

as Yelp and the Better Business Bureau as well:

> We purchased season ski passes from Ikon Pass (a division of Alterra).
> Two of the passes were children's ski passes, purchased for $159.00 each
> (total value $318.00).  Unfortunately due to Covid, the mountain was
> closed early in the season, our ski trip was canceled due to closures and
> our governor's Shelter in Place order which of course we followed.  Our
> passes were unused.  I don't want a refund (they were sold as "non-
> refundable") but I would like a chance to use the pass next season.  I have
> requested an extension to use our pass next year and have been told no
> multiple times and that we need to purchase new passes.  That doesn't
> seem fair.  I paid for a service I didn't receive, and would like to receive
> the service next year.  What is a reasonable resolution?[6]

> I purchased an Ikon pass which is a ski pass, for the 2019-2020 season. I
> paid $518.34 for the pass which provides for unlimited and limited skiing
> at certain resorts throughout the world for the entire 2019-2020 ski season.
> The season was advertised (during this season) by the respective Alterra
> resorts that closing dates for some of their Colorado resorts would be
> April 19, 2020 at Copper mountain, June 7th at A-basin, and May 3rd at
> Winter Park. After publicizing these dates Alterra decided to close all of
> their resorts on March 14. Thus, depriving me of over a month of access to
> the resorts. I would estimate that approximately 25% of the ski season was
> artificially and arbitrarily cut short by Alterra. I understand that the end of
> the season is variable but their decision was to close early was not due to
> weather/lack of snow. I asked for a partial refund and they refuse. I paid

---

[5] Cindy Cristiano, Comment, Facebook (May 5, 2020, 6:54 PM),
https://www.facebook.com/IkonPass/posts/3127076794016321?comment_id=
3128210677236266.
[6] Complaint, Better Business Bureau (April 22, 2020),
https://www.bbb.org/us/co/denver/profile/ski-resorts/alterra-mountain-company-
0885-90257225/complaints.

for a whole season, not 75% of a ski season and I feel they are unjustly enriching themselves at my expense.[7]

My family and I have spent countless thousands of dollars on Ikon and their resorts over the last several years. This year we all bought passes with the intent of almost exclusively using them from March until May, so we hardly used them at all.  Airlines, hotels, gyms, and every other major hospitality sector have made the choice to do the right thing in these tough times and NOT pass the economic burden down to their loyal customers, many of whom are struggling financially even more than Ikon is.  Until Ikon also does the right thing and provides a substantial and meaningful discount for this past year because of COVID (not an insulting $50 off next year's Ikon Pass), Ikon and its partner resorts will not get one more penny from me or my family. I will instead use my money to support companies that genuinely appreciate their customers.[8]

## CLASS ACTION ALLEGATIONS

36.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the following proposed class:

*All persons in the United States who purchased a 2019-20 season Ikon Pass, Ikon Base Pass, or other Ikon Pass, who had one or more days remaining for use as of March 15, 2020.*

37.    Excluded from the proposed class are Defendants; any affiliate, parent, or subsidiary of any Defendant; any entity in which any Defendant has a controlling interest; any officer, director, or employee of any Defendant; any successor or assign of any Defendant; any judge to whom this case is assigned, his or her spouse; and members of the judge's staff.

---

[7] Complaint, Better Business Bureau (April 17, 2020), https://www.bbb.org/us/co/denver/profile/ski-resorts/alterra-mountain-company-0885-90257225/complaints.

[8] Steve G., Yelp, (April 19, 2020, https://www.yelp.com/biz/alterra-mountain-company-dba-ikon-pass-denver?hrid=la_GPRIVWMgdA7TzUbySFA&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct).

38.     The above proposed class definitions suffice because they use objective characteristics; class membership turns on objective criteria including whether someone bought an Ikon ski pass. Documents identifying such persons are either in Defendants' possession or can be produced by class members at an appropriate time.

39.     **Numerosity**: Defendants sold thousands of the ski passes at issue. Members of the proposed class are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

40.     **Commonality and Predominance**: Common questions of law and fact exist as to all proposed members of the class and predominate over questions affecting only individual class members. These common questions include:

a.     Whether Defendants are in breach of their contractual obligations;

b.     Whether Defendants are contractually obligated to refund a portion of class members' ski-pass purchases;

c.     Whether Defendants have breached their contractual duties of good faith and fair dealing; and

d.     Whether Defendants are obligated, under principles of equity and good conscience, to refund a portion of class members' ski-pass purchases.

41.     **Typicality**: Plaintiffs' claims are typical of those asserted by the proposed class, as Plaintiffs and class members were similarly affected by Defendants' decision to stop refuse to provide refunds in connection with the closure of the ski resorts at issue, and each seeks to recover a refund.

42.     **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the proposed class. Plaintiffs' interests do not conflict with the class members' interests, as

both seek to recover refunds in connection with ski-resort closures from Defendants, and Plaintiffs have retained counsel experienced in complex class litigation to represent class members' interests.

43.     **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Defendants have taken money that rightfully belongs to thousands of consumers, and only through collective action can that wrong be fully remedied.

44.     **Injunctive Relief**: Defendants' decision to not provide refunds for closed ski resorts in the middle of a global pandemic was an action that applied generally to the entire class, such that final injunctive relief or corresponding declaratory relief would be appropriate respecting the class as a whole.

### FIRST CAUSE OF ACTION

### Breach of contract

45.     Plaintiffs re-allege the paragraphs above as if fully set forth herein.

46.     Defendants offered ski passes for sale to consumers to allow them to gain access to various ski resorts on the days of their choosing.

47.     Plaintiffs and class members accepted Defendants' offer by purchasing passes to gain access to those resorts.

48.     Defendants breached their contractual obligations by both closing the resorts and refusing to provide refunds to Plaintiffs and class members after doing so.

49.     As a result, Plaintiffs and class members have suffered damages, including loss of the use of the money they spent on the ski passes.

### SECOND CAUSE OF ACTION

### Breach of implied covenant of good faith and fair dealing

50.     Plaintiffs re-allege the paragraphs above as if fully set forth herein.

51.     As an alternative to the first cause of action's allegations, Plaintiffs and class members allege Defendants breached the implied covenant of good faith and fair dealing.

52.     Defendants offered ski passes for sale to consumers to allow them to gain access to various ski resorts on the days of their choosing.

53.     Plaintiffs and class members accepted Defendants' offer by purchasing passes to gain access to those resorts.

54.     The agreement between Defendants, on the one hand, and Plaintiffs and class members, on the other, afforded Defendants discretion with respect to the operation and temporary closure of the ski resorts and allowing Plaintiffs and class members access to all or some part of those resorts during the ski season.

55.     Defendants breached the implied covenant of good faith and fair dealing by using their discretion to act dishonestly and to act outside of accepted commercial practices to deprive Plaintiffs and class members the benefit of the contract, including by declining to refund ski-pass revenues even after closing the resorts for which the ski passes were purchased to provide access. In doing so, Defendants engaged in arbitrary and unreasonable conduct that prevents Plaintiffs and class members from receiving the reasonable expectations of the contract.

56.     As a result, Plaintiffs and class members have suffered damages, including loss of the use of the money they spent on the ski passes.

### THIRD CAUSE OF ACTION

### Money had and received

57.     Plaintiffs re-allege the paragraphs above as if fully set forth herein.

58.     As an alternative to the first and second cause of action's allegations, and without intending to make an election of remedies, Plaintiffs and class members seek restitution from Defendants for money had and received.

59.     Defendants received money from and on behalf of Plaintiffs and class members that was intended to be used for their benefit.

60.     Defendants did not use the money received from Plaintiffs and class members for their benefit and have not returned the money to them.

61.     As a matter of equity and good conscience, that money should be returned to Plaintiffs and the class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the proposed class, respectfully requests the following relief:

A.     A determination this action may be maintained as a class action;

B.     An award of damages and restitution;

C.     Appropriate injunctive and equitable relief sufficient to correct the harm caused by Defendants' actions and prevent it from continuing to capitalize on its unlawful practices;

D.     Pre-judgment interest and post-judgment interest, as provided by law;

E.     Attorneys' fees and expenses, including expert fees and costs; and

F.     Any and all other legal and equitable relief that the Court may find appropriate.

14

**JURY TRIAL DEMAND**

Plaintiff hereby demands a jury trial for all claims so triable.

Dated:  May 28, 2020                Respectfully submitted,

                                    **GIBBS LAW GROUP LLP**

                                    By: */s/ Steven M. Tindall*

                                    Eric H. Gibbs
                                    Steven M. Tindall
                                    Karen Barth Menzies
                                    David Stein
                                    Steve Lopez
                                    505 14th Street, Suite 1110
                                    Oakland, CA 94612
                                    Telephone: (510) 350-9700
                                    Facsimile: (510) 350-9701
                                    ehg@classlawgroup.com
                                    smt@classlawgroup.com
                                    kbm@classlawgroup.com
                                    ds@classlawgroup.com
                                    sal@classlawgroup.com

                                    *Attorneys for Plaintiffs*